cv4-208 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00208-CV







In the Matter of J. A., Appellant






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-12,029, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING








PER CURIAM


 The State accused J.A., a juvenile, of committing homicide. He challenges the
sufficiency of the evidence to support the trial court's waiver of jurisdiction and resultant transfer
of the case to the criminal justice system. We will affirm the order.

 On December 28, 1993, J.A. was a front-seat passenger in a car filled with
members of one gang. They saw a fight and stopped. A member of another gang approached the
car and got in J.A.'s face, "lipping," "throwing gang signs," claiming to have a gun, and
threatening to shoot J.A., though the gang member never showed a weapon. J.A. put the
automatic stick-shift car in neutral--possibly accidentally while leaning away from the taunter at
the window.

 The decedent, a friend of the rival gang member, also approached the car. He was
legally intoxicated. He was talking big, also making gang gestures, asking J.A. and others if they
wanted to see his weapon, and threatening to kill J.A and the others. He was actually unarmed. 
The decedent either reached inside his jacket as if for a weapon or pulled his arm back as if to
punch J.A. 

 J.A. said he was scared. He pointed the gun out the window and fired to protect
himself and scare away the taunters. He said he intended to fire into the air. The coroner
reported that the decedent was shot four times--once in the head, once in the neck, and twice in
the abdomen. J.A. and his friends then fled in the car.

 J.A. said he immediately felt bad about the incident. He said he wished the
decedent had not claimed to have a gun, wished he himself had not had a gun, and wished neither
of them had been at that scene. Other witnesses said they had never seen J.A. start fights and that
J.A. never bragged about the shooting.

 Dr. David Poole, a psychologist, evaluated J.A. He concluded that J.A. had an
IQ between 70 and 80, was immature, had had poor moral guidance, had no thought disorder, was
not particularly violent, knew right from wrong, and did not have an antisocial or anti-authority
personality. Dr. Poole testified that, though J.A. might initially avoid his gang friends if released,
he would likely drift back to them. He said J.A. might shoot again if placed in a similar position. 
Dr. Poole opined that J.A. could be rehabilitated. He recommended two years of residential
treatment because J.A. was one of the more hopeful kids he had seen.

 Ena Brent, a probation officer, testified that J.A. had numerous prior referrals to
juvenile court, was not a motivated probationer, and had failed to respond to services. She
conceded that J.A. had never been on intensive supervision or gone to the Texas Youth
Commission. She had no opinion regarding certification as an adult, however. 

 Dr. Nicholas Carrasco, a former director at the Giddings State Home and School,
testified that Giddings had a program for offenders like J.A. He deemed it unlikely that a person
almost seventeen, like J.A., could complete the program by his eighteenth birthday.

 J.A. had twelve prior referrals to juvenile court, primarily for burglary. He was
being considered for intensive supervision probation when the present offense occurred. He was
absent excessively from school and had been suspended from school seven times. 

 By his sole point of error, J.A. challenges the sufficiency of the evidence to support
the waiver of jurisdiction. Whether to waive is within the trial court's discretion. C.W. v. State,
738 S.W.2d 72, 75 (Tex. App.--Dallas 1987, no writ). As part of our review we evaluate the
evidentiary support for the trial court's decision on civil standards of review. In re G.F.O., 874
S.W.2d 729, 731-32 (Tex. App.--Houston [1st Dist.] 1994, no writ). If we find insufficient
evidentiary support, then we will find abuse of discretion. Id. 

 Whether J.A. challenges the legal or factual sufficiency of the evidence is unclear. 
To review a legal insufficiency point asserting that no evidence supports the judgment, we
consider only the evidence and inferences supporting the finding and disregard all contrary
evidence and inferences. Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992). If any evidence
of probative force supports the finding, we must affirm the finding. In re King's Estate, 244
S.W.2d 660, 661 (Tex. 1951). To review a factual sufficiency point, we must review and weigh
all the evidence. Plas-Tex, Inc. v. United States Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). 
We may set the judgment aside only if the favorable evidence is so weak as to render the judgment
clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 The Family Code sets out the considerations in a waiver proceeding:



(1) whether the alleged offense was against person or property, with
greaterweight in favor of transfer given to offenses against the person;

(2) whether the alleged offense was committed in an aggressive and premeditated
manner;


(3) whether there is evidence on which a grand jury may be expected to return
an indictment;


(4) the sophistication and maturity of the child;


(5) the record and previous history of the child;


(6) the prospects of adequate protection of the public and the likelihood of the
rehabilitation of the child by use of procedures, services, and facilities
currently available to the juvenile court.



Tex. Fam. Code Ann. § 54.02(f) (West 1986). The juvenile court need not find that all six
factors have been established, only that they have been considered. C.W., 738 S.W.2d at 75.

 Ample evidence supports the court's findings on the first three factors. The crime
was undisputedly committed against a person. The court's finding that the crime, though not
premeditated, was aggressive is likewise supported. In the thirty seconds between the first
approach by a rival gang member and the shooting, J.A. did not retreat or request that the driver
leave. He shot the victim repeatedly even though he never saw a weapon. Whether his
aggression was due to sudden passion or justified as self-defense is not the concern here. The
evidence also supports the court's third finding that a grand jury could indict J.A.

 Under part four, the court found that J.A. was maturing rapidly as a result of this
incident and beginning to reflect on the consequences of his actions. Ample evidence supports
this. Dr. Poole's testimony that J.A. was immature does not conflict with this finding. J.A. had
no intellectual or psychological impairments to prevent him from knowing right from wrong.

 The court's fifth conclusion was that J.A.'s juvenile record was neither the worst
nor the best, but slightly better than average. Though we cannot speak to the statistics nor the
trial court's experience, we concur and find that the evidence supports this conclusion as well.

 On the sixth factor, the court found that J.A.'s age precluded a meaningful chance
at rehabilitation. The evidence again supports this finding. Dr. Poole recommended two years
of rehabilitation, but J.A. was less than two years away from his eighteenth birthday. Though
Dr. Poole did not believe that J.A. was particularly violent, he did testify that J.A. was likely to
fall back in with his gang friends and might, if faced with a similar situation, react similarly. The
juvenile system's previous attempts to rehabilitate J.A. had failed in part because he was not
motivated to improve.

 The court's findings were supported by legally and factually sufficient evidence. 
The waiver of jurisdiction was not an abuse of discretion. We overrule point one.

 We affirm the trial court's order.


Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: May 17, 1995

Do Not Publish